Opinion
RYLAARSDAM, J.
After a trial on reserved issues in a marital dissolution proceeding, the court awarded physical custody of the parties’ five-year-old daughter Ashley to petitioner Lana Chandler (mother), and ordered respondent Bruce Chandler (father) to pay monthly child support of $3,000. In addition, the court ordered father to deposit $4,000 each month into a trust for certain child-related expenses. Mother appeals, challenging the creation of the trust. We conclude the record does not support the use of a trust and reverse that portion of the judgment.
Facts
At the time of trial, father had a gross monthly income of $117,000 and a net monthly disposable income of $71,002. He owned a bayfront home with an adjacent boat dock, a condominium in Las Vegas, Nevada, some property in Hawaii, plus several cars and boats. He supported two college-age sons from a prior marriage who had combined monthly expenses amounting to approximately $3,500.
Mother had a college degree and worked before the marriage earning $25,000 per year. At the time of trial, she was a homemaker, receiving $14,000 per month in temporary spousal support and $1,500 in temporary *127 child support from father. Mother’s income and expense declaration listed nearly $20,000 in monthly expenses, including over $3,000 for residential costs, $1,300 for food, $2,000 for clothing, $1,800 for child care and education costs and $8,400 in installment payments. A pretrial vocational evaluation concluded she could obtain work outside the home making between $1,200 and $2,000 a month.
The court concluded mother’s reasonable monthly expenses were $10,000, of which only $3,000 constituted “the current reasonable needs” of Ashley. Although the guideline formula authorized a monthly child support order of $9,197, the court found the presumptive correctness of this amount rebutted by father’s “extraordinarily high income” which exceeded “the needs of the child.” Thus, it ordered father to pay mother $3,000 per month as child support.
The court also ordered father to deposit an additional $4,000 per month into a trust for Ashley with mother designated as the trustee. The judgment prescribed the following uses for the trust funds: “1. In payment of additional child support as provided in [former] Civil Code section 4721 [, subdivision ](j) [now Family Code section 4062]. The contribution of the trust towards this additional child support shall be pursuant to [former] Civil Code Sections [sic] 4721 [, subdivisions] (i)(2) and (3) [now Family Code section 4061]. These payments shall be made directly to the provider of services or benefits whenever this is practicable, [f] 2. In payment of expenses not covered by the basic support order . . . and the additional child support expenses .... This shall include any needs of the child that may hereafter arise and/or not previously considered by the court. Such payments shall be made directly to the primary physical custodian of the child pursuant to the written agreement of the parties or pursuant to court order upon a showing of good cause.”
The court explained the trust’s purpose is to “provide for additional child support as set forth in [former Civil Code section 4721, subd. (j), now Family Code section 4062] and additional support upon a showing of need not established or in existence at trial. . . .” In addition, it found “the trust funds not invaded each month in connection with any reasonable need of [Ashley] . . . shall accumulate thus further providing a means for [Ashley] to participate in the affluence of respondent. The balance of the trust funds, if any, shall be distributed to [Ashley] upon [her] attaining the age of majority. The undistributed trust funds are, in substance, a ‘savings account’ established during the minority of [Ashley], again, relating to the affluence of respondent.” When announcing its decision, the court also noted the trust “allows the paying spouse to better rationalize the proposition that there’s an affluence participation . . . .”
*128 Discussion
Although the parties’ briefs raise several issues, at oral argument mother conceded a monthly child support award of $7,000 would have been valid under the circumstances of this case, and both parties agreed the sole issue presented is the validity of the trust. Thus, we focus on whether the trial court erred by creating a trust for child-related expenses in this case.
Child support awards are reviewed under an abuse of discretion standard. (McGinley v. Herman (1996) 50 Cal.App.4th 936, 940-941 [57 Cal.Rptr.2d 921]; In re Marriage of Wood (1995) 37 Cal.App.4th 1059, 1066 [44 Cal.Rptr.2d 236]; In re Marriage of Hubner (1988) 205 Cal.App.3d 660, 667 [252 Cal.Rptr. 428].) We cannot substitute our judgment for that of the trial court, but only determine if any judge reasonably could have made such an order. (In re Marriage of Aylesworth (1980) 106 Cal.App.3d 869, 876 [165 Cal.Rptr. 389].) Our review of factual findings is limited to a determination of whether there is any substantial evidence to support the trial court’s conclusions. (In re Marriage of Hubner, supra, 205 Cal.App.3d at p. 667.)
Applying these principles to this case, we conclude the trial court’s unilateral decision to create a trust constituted an abuse of discretion. The court established the trust to cover the add-on costs for child care, uninsured medical expenses, child-related education and special needs, and visitation travel now governed by Family Code section 4062, plus other “expenses” for “needs . . . that may hereafter arise and/or not previously considered by the court.” In so ruling, the court explained the additional support provided an “affluence participation” for Ashley. But the trust also placed restrictions on the use of the funds. For the add-on expenses, the costs must be apportioned between the parties in proportion to their net disposable income, thus limiting use of the trust funds to father’s share of these expenses. Payment for add-on expenses must also be made to the service provider if possible. Mother’s use of the trust funds for other “expenses” requires either father’s written permission or a court order.
We doubt it is ever appropriate to employ a trust when ordering a parent to pay child support, particularly one which, in part, places the custodial parent under the fiscal control of the supporting parent. But even assuming a trust can be used, it must be limited to cases where there is a strong showing of necessity, buttressed by specific, detailed factual findings compelling the need to limit access to support funds. (See In re Marriage of Hubner, supra, 205 Cal.App.3d at pp. 668-669; Goto v. Goto (1960) 187 Cal.App.2d 603, 606-607 [10 Cal.Rptr. 20].) The trial court’s explanation for employing a trust in this case falls far short of this standard.
*129 First, we would have no difficulty finding a monthly child support order of $3,000, standing alone, constitutes an abuse of discretion under the facts of this case. Given father’s monthly income, plus the findings on mother’s reasonable monthly expenses and the fact Ashley spends 90 percent of the time with her, an award of less than one-third the guideline figure, is erroneous. Similar cases have recognized such a drastic deviation from the guidelines constitutes an abuse of discretion. (See McGinley v. Herman, supra, 50 Cal.App.4th at pp. 944-946 [award of $2,150 a month where the supporting parent’s monthly income exceeded $116,000; reversed]; In re Marriage of Hubner, supra, 205 Cal.App.3d at pp. 667-669 [trial court erred by awarding less than one-half the discretionary guideline amount where the supporting parent’s gross monthly income exceeded $43,000]; In re Marriage of Catalano (1988) 204 Cal.App.3d 543, 552 [251 Cal.Rptr. 370] [error to award $1,110 a month where the supporting parent’s gross monthly income was $32,000].)
After finding father had an extraordinarily high income, the court determined Ashley’s monthly needs amounted to only $3,000. The court did not explain how it calculated this figure, but apparently it “attributed” $7,000 in monthly expenses to mother and subtracted this sum from the custodial household’s total monthly expenses, rather than independently determining the expenses for Ashley. This approach was erroneous.
What constitutes reasonable needs for a child varies with the circumstances of the parties. (White v. Marciano (1987) 190 Cal.App.3d 1026, 1032 [235 Cal.Rptr. 779]; Singer v. Singer (1970) 7 Cal.App.3d 807, 813 [87 Cal.Rptr. 42].) But the duty to support a child covers more than the mere necessities of life if the parent can afford to pay more. (Bailey v. Superior Court (1932) 215 Cal. 548, 555 [11 P.2d 865]; In re Marriage of Catalano, supra, 204 Cal.App.3d at p. 556.) Furthermore, it is presumed “a parent having primary physical responsibility for the children contributes a significant portion of available resources for the support of the children.” (See former Civ. Code, § 4720, subd. (a)(3)(I), now Fam. Code, § 4053, subd. (i).) A monthly support award of $3,000 would not even come close to providing Ashley with the amenities provided by the lifestyle she was used to before her parents separated.
Second, the reasons given for creating the trust are unpersuasive. In part, the court established the trust to provide for the mandatory and discretionary add-on expenses listed in former Civil Code section 4721, subdivision (j) and now governed by Family Code section 4062. But while section 4062 and its predecessor authorize “additional child support” for specified expenses, they do not mention the use of a trust to limit the custodial parent’s access to the additional support.
*130 Nor can the trust be premised on a desire to provide for undefined potential expenses, future needs or to establish a savings account for Ashley. In Primm v. Primm (1956) 46 Cal.2d 690 [299 P.2d 231], the Supreme Court held a court’s “jurisdiction” to determine the amount of child support “is limited to the conditions and circumstances existing at the time [the order is] made, and the court cannot then anticipate what may possibly thereafter happen and provide for future contingencies.” (Id. at p. 694.) The statutory definition of what constitutes support for a child has remained remarkably similar since Primm was decided. (Compare former Civ. Code, §§ 139 and 4700, subd. (a), with Fam. Code, § 150.) Furthermore, absent special circumstances such as completing high school or incapacity, a court has no authority to order a parent to support an adult child. (Fam. Code, §§ 58, 2010, subd. (c), 3901, subd. (a), 3910, subd. (a); In re Marriage of Lambe & Meehan (1995) 37 Cal.App.4th 388, 391-392 [44 Cal.Rptr.2d 641].) Thus, the trial court had no authority to create a fund to meet some unexpected contingency at some indefinite time in the future or to provide for Ashley when she becomes an adult.
Finally, in creating the trust the trial court expressed concern for father’s difficulty in rationalizing why his own daughter should participate in his wealth and standard of living. This concern simply ignores the principles underlying child support and gives validity to a desire often expressed by a supporting noncustodial parent: to maintain control over the moneys paid as support. By providing in its order that no portion of the trust funds could be paid directly to mother without father’s consent or court order, the trial court gave father substantial control over disbursements from the fund. The law does not provide for such control. Once the court determines the appropriate amount of child support, the supporting parent has no right to determine whether these funds are used to buy groceries, pay rent or pay for music lessons.
We recognize the statewide uniform child support guidelines (Fam. Code, § 4050 et seq.) have been criticized as creating a “harsh” and “inflexible” scheme “which will inevitably cause hardship and inequity.” (In re Marriage of Fini (1994) 26 Cal.App.4th 1033,1042 [31 Cal.Rptr.2d 749], fn. omitted.) But the wisdom of the guidelines is a matter for the legislative branch of government to decide, and the Legislature has mandated a parent support a minor child according to the parent’s ability to pay and economic status, even where the support also improves the custodial household’s standard of living. (See former Civ. Code, § 4720, subd. (a)(3)(A), (D) & (F), now Fam. Code, § 4053, subds. (a), (d) & (f).)
Moreover, whatever inequity may exist in the current child support statutes, it is not present in this case. Even at $7,000 per month, father’s support *131 obligation amounts to less than 6 percent of his gross income. If all facts were identical, except the noncustodial parent’s gross earnings were $4,000 per month, the guidelines would fix the monthly support payment at approximately $650 or more than 16 percent of the parent’s gross income. As one of Ashley’s parents, father has a duty to provide for her within his ability to do so and to satisfy his obligation by paying support directly to mother, the custodial parent.
Disposition
The portions of the judgment on reserved issues establishing a trust and ordering father to deposit $4,000 per month into it are reversed and the matter is remanded to the superior court with directions to enter a judgment ordering father to pay mother $7,000 per month in child support continuing until Ashley dies, marries, or is emancipated or until further order of the court. The trust shall be terminated and any funds currently held by it shall be transferred to mother. In all other respects the judgment on reserved issues is affirmed. Mother shall recover her costs on appeal.
Sonenshine, J., concurred.