[No. G029329. Fourth Dist., Div. Three. May 21, 2003.]

In re the Marriage of JEFFREY S. and KATHERINE L. GRAHAM.
JEFFREY S. GRAHAM, Respondent, v.
KATHERINE L. GRAHAM, Appellant.

1322

**COUNSEL**

Law Offices of David Wm. Shores and David Wm. Shores for Appellant.

Family Law Appellate Associates and Jeffrey W. Doeringer for Respondent.

**OPINION**

MOORE, J.—While Katherine and Jeffrey Graham were married, Jeffrey enrolled in and nearly completed law school.[1] During the marital dissolution proceedings, Katherine requested reimbursement to the community for funds spent on Jeffrey's legal education. In addition, she sought to have child support determined based on her claimed gross monthly income of $3,125. The court denied Katherine's request for reimbursement and determined her gross monthly income to be $5,618.08.

Katherine appeals. We agree with the trial court that whether Jeffrey's eventual graduation from law school might have the effect of substantially enhancing his earning capacity is speculative, making reimbursement for education costs unavailable. In addition, we hold that the trial court did not abuse its discretion in imputing income to Katherine based on a 36-hour workweek, paid at a per diem rate. However, we also hold that the trial court did abuse its discretion in applying an excessive hourly rate to the last four hours of each work shift. Affirmed in part, reversed in part, and remanded with directions.

I

FACTS

Katherine and Jeffrey were married in 1992. They had two children during the course of their marriage. Jeffrey enrolled as a student at Western State

---

[1] The parties are hereafter referred to by their first names as a convenience to the reader. We do not intend this informality to reflect a lack of respect for the parties. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1 [274 Cal.Rptr. 911].)

University College of Law (Western State) in 1994. During Jeffrey's enrollment, the couple spent over $12,000[2] for tuition and related expenses.

In June 1999, Jeffrey filed a petition for dissolution of marriage. At the time of trial in September 2000, Jeffrey had one remaining semester in law school, and did not have plans to take the California bar examination. His cumulative grade point average was approximately 2.2. While in law school, Jeffrey was employed as a police officer by the Costa Mesa Police Department. At the time of trial, he was making over $4,400 per month.

Katherine, a registered nurse, modified her work schedule at the hospital a number of times following the couple's separation. At the time of trial, she was working per diem, rather than full time. The parties disagreed as to the amount of income that should be imputed to her in determining the amount of child support she should receive. As Jeffrey saw it, she should be charged with working 40 hours per week. Katherine, on the other hand, thought her income should be based on a lesser number of hours, approximately 24 to 36 hours per week. The parties also disagreed as to the rate of pay that should be applied to those hours.

The judgment on reserved issues denied Katherine's request for reimbursement with respect to the law school expenses, stating that the court found "no substantive enhanced earning capacity of [Jeffrey] due to said schooling." It also found Katherine's gross monthly income to be $5,618.08, for the purposes of child support.

Katherine now appeals. She contends that the court erred in denying her claim for reimbursement for law school expenses and in imputing a $5,618.08 monthly income to her.

II

DISCUSSION

A. *Request for Reimbursement of Law School Expenses*

■ Katherine contends the trial court erred when it denied her claim for reimbursement of the money spent on Jeffrey's law school tuition and related expenses during the marriage. Moreover, she urges this court to rule that legal, medical, dental, and accounting degrees will be presumed to result in a substantially enhanced earning capacity as a matter of law.

---

[2]Additionally, it should be noted that Jeffrey also took out a student loan to aid payment of his law school expenses. At trial, Jeffrey accepted responsibility for the loan as his separate debt.

Family Code section 2641, subdivision (b), provides in pertinent part, "Subject to the limitations provided in this section, upon dissolution of marriage or legal separation of the parties: [¶] (1) The community shall be reimbursed for community contributions to education or training of a party that substantially enhances the earning capacity of the party."[3] Because both parties argue this appeal based upon the tacit assumption that the tuition was paid from community funds, our sole consideration with respect to the reimbursement issue is whether Jeffrey's legal education substantially enhanced his earning capacity within the meaning of section 2641, subdivision (b)(1).

As Jeffrey mentions in his reply brief, there are very few cases that discuss what is meant by substantial enhancement of the earning capacity of a student spouse. The primary source of guidance regarding the substantial enhancement of earning capacity standard is the Law Revision Commission comment following section 2641. The comment states that "[s]ection 2641 provides authority for reimbursement of educational expenses that have benefited primarily one party to the marriage." (Cal. Law Revision Com. com., 29D West's Ann. Fam. Code (1994 ed.) foll. § 2641, p. 143.) Specifically, the substantial enhancement requirement is a "limitation . . . intended to restrict litigation by requiring that the education or training must demonstrably enhance earning capacity and to implement the policy of the section to redress economic inequity." (*Ibid.*)

In the instant case, Jeffrey attained a grade point average of 2.2 at Western State, and, at the time of trial, had no plans to take the bar examination. Jeffrey testified that he went to law school to further his education, but did not necessarily have any plans to become an attorney. He explained that, when he was in college, he had partied and played football, but had wasted the opportunity to get an education. When he realized that in retrospect, he wanted to make up for the lost opportunity, by furthering his education at that time. He went to law school in pursuit of that objective, not for the purpose of financial gain. Furthermore, Jeffrey was already working at the Costa Mesa Police Department while going to law school, and he argued that his earning potential might well be greater if he remained at that place of employment, rather than pursuing a legal career.

The evidence does not support a conclusion that Jeffrey's legal education had either substantially or demonstrably enhanced his earning capacity. To the contrary, the facts support the trial court's finding that any enhanced earning capacity was questionable. The trial court summed up the situation

---

[3]All further statutory references are to the Family Code, unless otherwise specifically stated.

well by stating: "It's too speculative . . . to try to figure out whether he is going to make more money in the future, and he may or he may not. [¶] He may or may not pass the bar. He may or may not do anything with the law degree. He may decide that he wants to stay in the police department and go for a higher position . . . . [¶] He might find that what he can make there looks pretty good compared with trying to scratch out a living in the legal field. [¶] A law degree is not a ticket to prosperity. Some people are very good at it and make money, and other people become disillusioned and they don't make any money. [¶] So, . . . it's all on the come. It may happen, it may not . . . ."

While Katherine requests us to declare that a law degree results in a substantial enhancement of earning capacity as a matter of law, we cannot do so. This is a perfect case to demonstrate the fallacy of the proposed rule.

B. *Imputation of Income to Katherine in Determination of Child Support*

 Katherine complains that the court abused its discretion in imputing to her an earning capacity of $5,618.08 per month, based on 36 hours per week at $24.01 per hour plus 12 hours per week at $36.01 per hour. She argues that this erroneous imputation of income resulted in a diminution of her child support award. "A trial court's decision to impute income to a parent for child support purposes based on the parent's earning capacity is reviewed under the abuse of discretion standard. [Citations.] 'Under this standard, "[t]he appellate court should not substitute its own judgment for that of the trial court; it should determine only if any judge reasonably could have made such an order. [Citation.]" [Citation.]' [Citation.]" (*In re Marriage of Destein* (2001) 91 Cal.App.4th 1385, 1393 [111 Cal.Rptr.2d 487].)

 In this case, the trial court made its ruling amid a cloud of confusing, if not contradictory, testimony concerning Katherine's then current income. The court remarked that "a lot of the problem is that this pay situation is very hard to absorb" and even said that "the calculation gets a little bit crazy." The comments are not surprising. During the time period the court was evaluating in order to determine Katherine's income, the hospital had changed pay rates. On top of that, Katherine: (1) had worked extra hours during the holidays, skewing her gross monthly income early in the year; (2) had switched from night shifts to day shifts, those shifts paying different rates; (3) had changed her employment status from part time to full time to per diem, and did not have fixed hours once she went on per diem; and (4) was paid at different rates, including both overtime and a pay differential, depending on the number of hours she happened to work on a given shift.

Jeffrey's counsel urged the court to simply determine that Katherine worked 40 hours per week at $24.01 per hour. The court declined to adopt

that suggestion. However, as Jeffrey and Katherine both agree, the record reflects that the court, at trial, ultimately determined that Katherine worked 36 hours per week. Jeffrey's counsel was drafting the judgment and requested permission to include a pay differential, and the court granted the request.

Katherine argues that the court erred in imputing income to her based on 36 hours per week of work. She emphasizes the portion of her testimony in which she declared that she worked two or three 12-hour shifts per week, for a total of 24 to 36 hours a week, and that she expected to make approximately the same amount of money as when she had worked full time, i.e., $40,000—$44,000. She overlooks the portion of her testimony in which she stated, "I try to schedule myself Mondays, Wednesdays and Fridays, and then I have a weekend commitment of three shifts every other month on the weekends." Based on this testimony, we cannot say that no judge reasonably could have made the determination that she worked 36 hours per week.

However, the manner in which the hourly rate was applied to those hours is another thing. The judgment Jeffrey's counsel prepared provides, "The income for [Katherine] shall be calculated at $24.01 per hour at 36 hours ($864.36) per week and $36.01 per hour for 12 hours per week ($432.12), for a total of $1,296.48 per week." The evidence does not support this calculation.

Katherine testified that she was paid $24.01 per hour for the first eight hours of her shift. She was also paid overtime at time and a half. At one point she testified that she only got paid the overtime pay on the last four hours of her shift if she completed the entire 12-hour shift, but not if she was sent home early. At another point in her testimony she said that she received overtime pay at time and a half for all hours over eight, irrespective of whether she completed the full 12-hour shift. In addition to the overtime pay, for the last four hours of a 12-hour shift, she was paid a differential, but only if she worked the full 12-hour shift. If the hospital sent her home before she completed the full 12 hours, she was denied the differential. She said she was uncertain about the amount of the differential, and variously testified that she was paid an additional amount of either $2.50 or $3.50 per hour for the last four hours, as the differential, if she completed the full 12 hours.

Based on this testimony, the greatest amount of money that could reasonably be determined to have been earned based on working three full 12-hour shifts per week would have been 24 hours (the first eight hours of three shifts) at $24.01, plus 12 hours (the last four hours of three shifts) at time and a half plus a differential of $3.50 per hour. In other words, the maximum

amount would have been $576.24 ($24.01 times 24 hours) plus $474.18 ($36.015 plus $3.50, times 12 hours), or a total of $1050.42 per week.[4]

Yet the judgment in effect applies the rate of $60.02 (i.e., $24.01 plus $36.01) per hour for the last four hours of each 12-hour shift. The parties cite no evidence in the record to support an hourly rate in this amount, even when it is assumed that Katherine works a full 12-hour shift in every event and that she receives both overtime pay and a differential of $3.50 for the last four hours of every single shift. The court abused its discretion in applying such a rate and the matter must be remanded for a determination of the rate to be applied to hours over eight in a given shift, based on the evidence presented.

Jeffrey disagrees. In the first two months of 2000, before Katherine changed her work status to per diem and when she was working extra hours, she made more than the $1,296.48 per week enunciated in the judgment. As Jeffrey sees it, this means there was substantial evidence to show Katherine made at least the weekly amount stated in the judgment. However, the trial court chose to take into consideration the fact that Katherine had changed to a per diem work schedule in spring 2000 and to disregard the extra hours she had worked during the holidays. We find no fault in this.

As for Jeffrey's assertion that it is too late for Katherine to challenge the trial court's determination of her income, for having failed to challenge it at the trial level, we disagree. Jeffrey cites *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132 [61 Cal.Rptr.2d 559], in which the husband claimed the trial court erred in the determination of his income because it looked only at his last month's gross income, rather than his average gross income over the preceding 12 months. He lost on that point on appeal because he had failed to raise the issue previously. (See also *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988 [64 Cal.Rptr.2d 383] [wife waived issues pertaining to calculation of income, with respect to withholding exemptions, time share, tax deductions and hardship deduction, by failing to raise them in the trial court].) However, in the case before us, Katherine repeatedly challenged the proposed imputation of income to her.

At trial, Jeffrey's counsel argued that, when working per diem, Katherine made $39 per hour for one-third of the time that she worked. When the court asked Katherine's counsel for a response, he said that this description "misstated the testimony." He stated more than once that to calculate

---

[4]We observe that this amount exceeds the amount Katherine would have earned had she worked 40 hours per week at the rate of $24.01 per hour. Determined in that manner, Katherine would have made $960.40 per week.

Katherine's income in the manner suggested would be to punish Katherine for going from full time to per diem, with the goal of making the same amount of money in fewer hours (per diem being paid at a higher hourly rate) and having extra time to spend with the children. He also expressed the opinion that the numbers Jeffrey's counsel had given the court constituted "a cantation [*sic*] thrown in the sky. This is [*sic*] numbers pulled down in order to confuse the court." When Jeffrey's counsel repeated for the court that she would draft a judgment based on 36 hours per week at $24.01 per hour plus a differential, Katherine's counsel complained that there was no evidence on the amount of the "flex" or the "differential." Given this, it would be incorrect to state that Katherine had failed to challenge the imputation of income at the trial level, so as to preclude her from making a challenge on appeal.

## III

### DISPOSITION

The judgment is affirmed in part, reversed in part, and remanded with directions. We reverse the child support order and remand that matter to the trial court for a determination of the correct amount of child support Jeffrey is to pay Katherine, taking into consideration Katherine's working three shifts a week. In all other respects, the judgment is affirmed. Katherine shall recover her costs on appeal.

Sills, P. J., and Bedsworth, J., concurred.