[No. B222906. Second Dist., Div. Two. Aug. 29, 2011.]

In re the Marriage of JON and SARAH TRIGGER CRYER.
JON CRYER, Appellant, v.
SARAH TRIGGER CRYER, Respondent.

**COUNSEL**

Buchalter Nemer, Harry W.R. Chamberlain II, Robert M. Dato, Efrat M. Cogan; Susan E. Wiesner and Amanda B. Harvey for Appellant.

Law Offices of Vicki J. Greene, Vicki J. Greene and Gary J. Cohen for Respondent.

OPINION

**BOREN, P. J.**—Jon Cryer and Sarah Trigger Cryer were married and had a son (hereinafter, child). They eventually separated and divorced. Following their separation, Sarah had primary physical custody of child and received substantial child support. After a dependency action was initiated, however, child was placed with Jon. While the dependency action was still in the early procedural stages, Jon sought to modify his child support obligation. The family court modified the child support amount but did not decrease it as much as Jon requested.

■ On appeal, we find that the family court did not abuse its discretion by declining to order a more severe reduction of child support. The court properly found that special circumstances existed, and its ruling was consistent with the objective of protecting child's best interest. It also did not err by denying a request for an accounting or trust for the child support funds. Finally, we find that the ordered attorney fee awards were proper. Accordingly, we affirm.

## FACTS

Jon and Sarah have both had acting careers, though their career paths diverged widely. As a costar in the TV show *Two and a Half Men*, Jon's career soared. In contrast, Sarah's career stalled; it appears her last acting job was in 2005.

Jon and Sarah were married in 2000 and had child in June of that year. The couple separated in April 2004, around the time Jon finished his first season on *Two and a Half Men*. With Jon's assistance, Sarah bought a condominium in December 2004.

Following divorce proceedings, judgment of dissolution was entered in January 2006. In a stipulated judgment entered into around the same time, Jon agreed to pay Sarah $10,000 per month for child support, and the parties agreed to a custody arrangement giving Sarah a 65 percent "time share" of child and Jon 35 percent. From December 2004 until May 2009, child lived primarily in Sarah's home.

After their divorce, Jon and Sarah both remarried. Sarah had a son in January 2007, with her new husband, David. Sarah and David separated in March 2009 and eventually divorced.

In May 2009, Jon brought an ex parte application in the family court (the trial court) requesting sole physical custody of child. Jon alleged that child had been improperly cared for by Sarah and was left unsupervised. The trial court denied the ex parte application but cautioned Sarah not to leave either of her children unattended.

Later that month, Sarah's younger son suffered an injury while in Sarah's home. That event led to the initiation of a dependency action against Sarah, and both of Sarah's sons were immediately placed by the Los Angeles County Department of Children and Family Services (DCFS) with their respective fathers. Sarah applied to the trial court for an order requiring Jon to pay for her attorneys in the dependency action, but her request was denied.

On August 3, 2009, with the dependency action still pending, Jon filed an order to show cause seeking to have his monthly child support obligations reduced from $10,000 to zero. Jon argued that his previous stipulated judgment with Sarah was predicated on her 65 percent time share for child. Jon contended that because the dependency court placed child with him, and Sarah was allowed only short periods of monitored visitation, none of the money he was paying as child support went to child and the obligation should cease.

Sarah opposed the order to show cause. She argued that the child support obligation of $10,000 per month was not a burden on Jon since it constituted only around 3 percent of his income at the time. She also argued that the custody arrangement ordered by the dependency court was temporary and subject to change, and that if she did not receive the child support she would lose her house and car and be unable to pay other bills, which would in turn harm child.

Prior to the hearing, the parties submitted income and expense declarations. Jon's showed income of approximately $327,000 per month, liquid assets of nearly $7 million, and monthly expenses of approximately $29,000. Sarah's showed negligible average income and liquid assets, and monthly expenses of approximately $10,000, not including attorney fees. In her declaration, Sarah stated her "only significant source of income" was the child support she received from Jon.

The hearing on the order to show cause was held on November 2 and the trial court issued its statement of decision on December 3, 2009. The trial court did not reduce Jon's child support obligation to zero as he was seeking, but did modify the obligation, requiring Jon to continue paying child support

at a rate of $10,000 per month through the duration of 2009, and then $8,000 per month beginning in January 2010. The ruling was primarily based on the status of the dependency proceedings. Since the proceedings were still in the preadjudication phase, Sarah's custody arrangement could be modified in short order, and DCFS had authority to liberalize visitation at any time. The court found it was in child's best interest to be able to return to the same home that he had shared with his mother prior to the dependency case, and that it was important for Sarah to have regular and consistent contact with him. The court found that Jon was an extraordinarily high earner, and that guideline support (Fam. Code, § 4050 et seq.) of .$1,141 per month would be unjust and inappropriate under the circumstances. Jon was also ordered to pay $20,000 to Sarah's attorney for fees. The order stated that Sarah was expected to pursue gainful employment. The court scheduled a review hearing for possible further child support modification.

After the statement of decision was served, Jon filed a motion for reconsideration. Shortly thereafter, he filed a separate order to show cause seeking an accounting of how all child support funds paid to Sarah since June 1, 2009, were used, or, alternatively, an order requiring the support funds to be paid into a trust account. Jon believed that Sarah was circumventing the prior ruling denying her request to have Jon pay her dependency attorney fees by using the child support funds to pay those same fees.

The trial court heard both of these matters in February 2010. The court granted in part the motion for reconsideration and made some technical, though not particularly substantive, changes to its prior statement of decision. As for the order to show cause, the court found that there was no legal authority that would support an accounting or imposition of a trust and denied Jon's motion. A total of $5,000 in attorney fees was awarded to Sarah's counsel.

Jon then filed two "supplemental" memoranda of points and authorities in anticipation of the scheduled review hearing regarding the requested child support modification. Jon stated that Sarah's visitation rights had not been liberalized, even though the dependency action was instituted in May 2009. Further, Sarah had not found a job and had not produced any evidence that she was looking for a job. Jon argued that Sarah was the person benefitting from the child support payments, not child, and requested that the court stay any further child support until Sarah's visitation rights were liberalized. Jon also submitted an income and expense declaration listing average monthly income of $474,861, based on a three-year average cash flow.

Sarah filed responsive papers arguing that Jon misstated his monthly income by averaging the prior three years of cash flow. She claimed that Jon's monthly income as of 2009 was actually $791,666. Sarah's papers also stated that her visitation rights had in fact been liberalized, since child was having home visits with her. Sarah again argued that she would be unable to pay for her home if the child support stopped. She also submitted an income and expense declaration stating a monthly income of zero and monthly expenses of $13,271.

The review hearing was held on May 10, 2010. The trial court found that there were no changed circumstances that would warrant a modification to the prior child support order. At the hearing, the court stated that it had previously set the review hearing in the hope that the jurisdictional and disposition phases of the dependency matter would be completed. The dependency action, however, had progressed extremely slowly. As an example, the court noted that if there were an "exit order" eliminating Sarah's custody rights, that would constitute a significant change. But there had not been any significant change in circumstances since the last hearing in November 2009. The court reiterated its finding that it was in child's best interest that Sarah have a home for him to return to, and that she was likely to lose the home absent child support. The court thus denied the requested modification. In addition, it ordered Jon to pay $40,000 in fees to Sarah's attorney.

## DISCUSSION

Jon appeals the trial court's rulings on (i) his initial order to show cause for modification of child support, (ii) his order to show cause seeking an accounting or imposition of a trust, and (iii) his later attempt at modification at the "review" hearing. Jon also contends that the attorney fees awarded to Sarah were excessive.[1]

I. *The Trial Court's Order Modifying Child Support Was Proper*

Child support orders are subject to an abuse of discretion standard of review. (*In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 128 [70 Cal.Rptr.2d 109] (*Chandler*).) As is standard in this type of review, we do not substitute our judgment for that of the trial court, and we will disturb the trial

---

[1] We deny Sarah's motion to strike portions of Jon's reply brief and request for sanctions. Although portions of Jon's reply rely on matters outside of the record or are similarly defective, we elect to forego our options to order the brief returned for correction or to strike the brief. (Cal. Rules of Court, rule 8.204(e)(2)(C).)

court's decision only if no judge could have reasonably made the challenged decision. (*Ibid.*) We review factual findings by determining whether they are supported by any substantial evidence. (*Ibid.*) Since we are reviewing a child support order, however, we are mindful that "determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule." (*In re Marriage of Butler & Gill* (1997) 53 Cal.App.4th 462, 465 [61 Cal.Rptr.2d 781].)

Jon argues that the trial court's December 2009 order requiring him to pay monthly child support in the amount of $10,000 through 2009 and $8,000 afterward was an abuse of discretion. He points out that the order required him to pay significantly more than guideline support of $1,141 per month. Jon contends that the ruling was untenable, particularly because at the time of the ruling he had nearly total responsibility for child. We agree that under normal circumstances, such a deviation from guideline support would be an abuse of discretion.

This case, though, presented anything but normal circumstances. The trial court was faced with a pending and uncertain dependency case over which it had no control and which, although initiated months prior, was still in an early procedural stage. An imprudent order had the potential to undermine the preferred objective of the dependency matter, reunification. The trial court also faced the strong possibility that visitation and custody arrangements could change quickly, as they often do in dependency matters. Furthermore, while one parent enjoyed an extraordinarily high income and could easily afford to pay monthly child support of $8,000 or $10,000, the other parent had essentially no income, and would be unable to maintain a household of the sort to which child was accustomed absent substantial support. Given these unusual circumstances, and particularly because the trial court's ruling reflected a paramount concern of protecting child's best interest, we cannot say that the court abused its discretion.

A. *Overview of relevant law*

The amount of child support normally payable is calculated based on a complicated algebraic formula found at Family Code section 4055.[2] Although this formula is referred to as the statewide uniform "guideline" (§ 4055), "guideline" is a misleading term. (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183 [114 Cal.Rptr.2d 646].) The formula support amount is "presumptively correct" in all cases (see §§ 4053, subd. (k), 4057, subd. (a)), but "may be rebutted by admissible evidence showing that

---

[2] Unless otherwise noted, all statutory references are to the Family Code.

application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in Section 4053 . . . ." (§ 4057, subd. (b).)

█ Section 4053 sets forth a number of principles, foremost among them being the protection of the child's best interest: "The guideline seeks to place the interests of children as the state's top priority." (§ 4053, subd. (e).) Among other principles, section 4053 also provides, "(a) [a] parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life"; "(d) [e]ach parent should pay for the support of the children according to his or her ability"; and "(f) [c]hildren should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children." █ In light of these principles, departure from the standard child support formula may be appropriate when application of the formula "would be unjust or inappropriate due to special circumstances in the particular case" (§ 4057, subd. (b)(5)), so long as the variance is consistent with section 4053.

### B. *The special circumstances*

█ At the time of the initial hearing on the requested modification, Jon was paying Sarah $10,000 per month for child support. In bringing his order to show cause, Jon argued that there had been a material change in circumstances due to the dependency proceedings, which caused his time share to increase dramatically. A child support order may be modified when there has been a material change of circumstances. (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1234 [58 Cal.Rptr.3d 877].)

The trial court (at least implicitly) acknowledged there was a change in circumstances. As noted in the court's statement of decision, Sarah's time share had decreased from 65 percent to 4 percent.

Jon was successful in persuading the trial court to modify child support, but he takes issue with the amount of the modification. As required by section 4056, subdivision (a), the trial court's statement of decision included the amount of support that would have been ordered under the guideline formula: $1,141 per month, payable from Jon to Sarah. This comparatively low amount was largely the result of Sarah's then 4 percent time share. The court departed from this guideline amount, finding that it would be "unjust and inappropriate" under the special circumstances of the case to modify Jon's obligations to such an extent, and instead ordered a reduction from $10,000 to $8,000.

We find that the trial court's decision was well reasoned and consistent with the principles of section 4053, especially the principle of protecting

child's best interest. Jon is correct that the modification was unusual. So far as we are able to determine, no published California case has examined the propriety of an order giving above-guideline child support to a parent with a minimal time share. In many cases, such an order would be improper. But, as noted above, this was not a typical case.

The "special circumstances" exception of section 4057, subdivision (b)(5) gives the trial court "considerable discretion to approach unique cases on an ad hoc basis." (*County of Lake v. Antoni* (1993) 18 Cal.App.4th 1102, 1106 [22 Cal.Rptr.2d 804]; see also *In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1043 [31 Cal.Rptr.2d 749] ["the court, in child support cases, is not just supposed to punch numbers into a computer and award the parties the computer's result without considering circumstances in a particular case which would make that order unjust or inequitable"].) The trial court has "broad discretion" to determine when special circumstances apply. (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1361 [119 Cal.Rptr.2d 430].)

This was a unique case that presented special circumstances, particularly when viewed from the trial court's perspective in late 2009. Prior to initiation of the dependency matter, child spent most of his time with Sarah. At the time of the November hearing, Sarah's custody and visitation rights were in the control of the dependency court and DCFS, and were subject to potentially sudden change. "The parent-child relationship and its attendant duty of support do not end when a child is declared a dependent of the juvenile court and removed from the parents' custody. [Citation.] To the contrary, the chief objective of the dependency law is the preservation or reunification of the family whenever possible." (*County of Ventura v. Gonzales* (2001) 88 Cal.App.4th 1120, 1122 [106 Cal.Rptr.2d 461].) An order granting a large decrease of child support could have jeopardized the objective of the dependency action. Substantial evidence supported the conclusion that Sarah would have lost the house in which child had lived much of his life, and would have faced other substantial burdens that likely would have impacted her attempts at reunification. Child's interest was best served by an order that promoted the objective of reunification, as this one did.

Further, the trial court correctly appreciated that the dependency action was still in its initial stages. Jon argues that the dependency action had already lasted about six months with no change in visitation. But, given the procedural posture of the dependency action, a substantive change was likely to occur. Despite its May 2009 initiation, the jurisdictional hearing and the disposition hearing had not occurred as of December. This in itself was unusual. Generally, the jurisdictional hearing happens no later than 30 days after the filing of the petition. (Welf. & Inst. Code, § 334.) The disposition

hearing often immediately follows the jurisdictional hearing (Cal. Juvenile Dependency Practice (Cont.Ed.Bar 2010) § 5.1, p. 291), and is subject to strict time limits. (See Welf. & Inst. Code, § 352.) Numerous important issues are addressed at the disposition hearing, including whether the child is adjudged a dependent of the court (Welf. & Inst. Code, § 360, subd. (d)); if so, whether to keep the child at home or remove the child (see Welf. & Inst. Code, § 361); with whom to place the child if removed (Welf. & Inst. Code, § 361.2); and whether reunification services should be provided (see Welf. & Inst. Code, § 361.5). When the child is adjudged a dependent of the court and removed from a parent's custody, reunification services are generally required (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228 [91 Cal.Rptr.3d 140, 203 P.3d 454]), and visitation is a vital component of reunification (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972 [134 Cal.Rptr.2d 210]). Thus, from the trial court's perspective at the time of the hearing, the visitation and custody situation was potentially volatile. The trial court was not obligated to order a severe reduction in child support based on apparently temporary conditions. (See *Goldring v. Goldring* (1949) 94 Cal.App.2d 643, 649 [211 P.2d 342].)

■ In addition, given the posture of the dependency matter, the trial court did not abuse its discretion by finding that child's best interest was served by a level of child support that would allow Sarah to make the payments necessary to avoid losing her family home. A " 'child's need is measured by the parents' current station in life,' " and " 'where the child has a wealthy parent, that child is entitled to, and therefore "needs" something more than the bare necessities of life.' " (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 293 [111 Cal.Rptr.2d 755] (*Cheriton*).) There was a benefit to child in ordering this level of support, and the fact that Sarah obviously benefited did not per se invalidate the order. (See *In re Marriage of Hubner* (1988) 205 Cal.App.3d 660 [252 Cal.Rptr. 428].) Depending on the status of Sarah's visitation and custody situation, child could stay in her house, a house he was used to and which was commensurate with the high standard of living to which he was accustomed. In light of his father's substantial income and wealth, child "needed" more than a low-rent apartment, which was Sarah's only likely housing option if child support were decreased to guideline levels. An order that resulted in child's spending time with his father in an opulent abode and time with his mother in a low-rent apartment would have conflicted with the principles of section 4053.

Importantly, child suffered no obvious detriment from the order. The $10,000 and $8,000 support levels did not impact Jon's ability to provide for child. Nor did the order have any significant detrimental impact on Jon's financial situation. Each parent is expected to pay child support according to

his or her ability. (§ 4053, subd. (d).)[3] The $8,000 support amount constituted anywhere from 1 percent to 2½ percent of Jon's monthly income, depending on which income numbers were used. Although, understandably, Jon may have found the situation unfair, the primary focus must remain on the child's well-being, not the parents' feelings. Since the order minimized potential harm to child's standard of living and station in life, and a severe reduction in support could have caused such harm, the court's order was not an abuse of discretion.

### C. *The $8,000 support amount*

Jon argues that the $8,000 support amount was excessive because Sarah's income and expense declaration showed a total of only $4,999 in expenses that were directly related to keeping the house: the mortgage payment, real property taxes, and utilities. The modification order was not simply premised on allowing Sarah to keep the home, however. Rather, the statement of decision emphasized the importance of reunification and the court's reluctance to make any drastic changes pending a more certain status in the dependency action. A child support order need not, and generally should not, earmark specific amounts for certain purposes. (*In re Marriage of de Guigne, supra*, 97 Cal.App.4th 1353, 1364–1365; *Chandler, supra*, 60 Cal.App.4th 124, 128.)

Further, despite Jon's argument to the contrary, the court apparently did take into account extra expenses he incurred due to the dependency matter. The court reduced the monthly support amount from $10,000 to $8,000. Although Jon contends that the reduction in child support was too small, the court was obligated to examine the financial circumstances of both parents. (See *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 560 [14 Cal.Rptr.3d 482].) Jon was not likely to suffer any appreciable hardship paying $8,000 a month, and the amount was consistent with the trial court's proper objective of maintaining the status quo pending a more definite status in the dependency matter.

### D. *The denial of retroactive modification*

Jon also argues that the modification of support should have been made retroactive to August 2009, when he served his order to show cause. An

---

[3] Jon argues that the trial court erred by declining to impute income to Sarah based on her earning ability. We do not find any fault with this decision. Whether earnings should be imputed to an unemployed parent is a matter "addressed to the trial court's sound discretion." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2011) ¶ 6:440, p. 6-178 (rev. # 1, 2011), citing *In re Marriage of Graham* (2003) 109 Cal.App.4th 1321, 1326 [135 Cal.Rptr.2d 685].) A court may impute income only when it is in the child's best interest. (*Cheriton, supra*, 92 Cal.App.4th at p. 301.) Jon does not explain how imputing income to Sarah would have been in child's best interest, and we discern no abuse of discretion.

order modifying child support may be made retroactive to the date that the notice of motion or order to show cause for modification was served. (See *County of Santa Clara v. Perry* (1998) 18 Cal.4th 435, 441 [75 Cal.Rptr.2d 738, 956 P.2d 1191].) When the order is based on a party's unemployment or certain type of military activation, the order "shall be" made retroactive, unless there is "good cause" to deny retroactivity. (§ 3653, subds. (b), (c).) When the modification is based on other reasons, as is the case here, whether to order retroactivity is a matter within the trial court's sound discretion. (See § 3653, subd. (a).) In exercising its discretion, the trial court's analysis must focus on the child's needs, which is dependent on the parents' ability to provide support. (*Cheriton, supra*, 92 Cal.App.4th at p. 293.)

The trial court's denial of retroactivity was proper. In practical terms, given Sarah's financial situation, modifying support retroactively likely would have resulted in a loss of the house, a result that would not have been in child's best interest. Jon, on the other hand, bore no "unjust and unreasonable financial burden" due to the denial of retroactivity. (*In re Marriage of Leonard, supra*, 119 Cal.App.4th at pp. 560–561 [finding good cause for denial of retroactive unemployment-based modification when retroactivity would harm children and parent had ability to bear financial burden].)

## II. *The Denial of an Accounting or Imposition of Trust Was Not in Error*

After the trial court decided not to severely modify his child support obligation, Jon brought an order to show cause requesting an accounting of how the child support funds were used, or requiring the support funds to be paid into a trust account. This was a somewhat audacious request, as similar arrangements have been flatly rejected by the Court of Appeal. (See *Chandler, supra*, 60 Cal.App.4th 124, 128; *Cheriton, supra*, 92 Cal.App.4th 269, 293–294.) The trial court denied the order to show cause, finding there was no legal authority to support it.

 We cannot definitively say that in all circumstances, requiring an accounting or trust of support funds would necessarily be improper. Our task on appeal, however, is not to review the trial court's reasoning, but to review the ruling. (*Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, 1312 [65 Cal.Rptr.3d 513].) Since Jon's order to show cause rested on nothing more than speculation, it could not meet the high standard under which an accounting or trust could possibly be acceptable.

*Chandler* cogently expressed the reasons not to require a trust for child support, and its reasoning is applicable to the request for accounting as well. In *Chandler*, the trial court ordered the father to pay $3,000 in monthly child support and to place $4,000 in a trust each month for child-related expenses.

The Court of Appeal found that the court's decision to create the trust constituted an abuse of discretion. (*Chandler, supra,* 60 Cal.App.4th at p. 128.) The trust placed restrictions on use of the funds, and the mother's use of the funds for nondelineated expenses required the father's written permission or a court order. (*Ibid.*) The Court of Appeal found that the law did not provide for the supporting parent's control of the money paid for support, whether "used to buy groceries, pay rent or pay for music lessons." (*Id.* at p. 130.) It held as follows: "We doubt it is ever appropriate to employ a trust when ordering a parent to pay child support, particularly one which, in part, places the custodial parent under the fiscal control of the supporting parent. But even assuming a trust can be used, it must be limited to cases where there is a strong showing of necessity, buttressed by specific, detailed factual findings compelling the need to limit access to support funds." (*Id.* at p. 128.)

Jon again points out that, at the time he brought the order to show cause, he was effectively the custodial parent. But an order imposing a required accounting or trust would have undercut the trial court's reasons for modifying support by only $2,000. Mother would have been hamstrung in her attempts to make household expenditures, which in turn could have negatively impacted her attempts at reunification, thereby harming child.

Moreover, even if we were to assume that such an order might still have been appropriate, Jon's papers did not meet the level of detail and evidence necessary to impose such an extreme order. *Chandler* spoke of limiting such orders to cases in which there is a "strong showing of necessity, buttressed by specific, detailed factual findings." (*Chandler, supra,* 60 Cal.App.4th at p. 128.) Jon's papers had none of these traits. Instead, his order to show cause primarily rested on the following statement: "[Jon] now fears that [Sarah] is doing latently what the court ordered she could not do patently, which is to use the funds that [Jon] is paying her in child support to pay her privately retained dependency counsel and experts in that matter." Jon presented no evidence that Sarah actually was paying dependency counsel with the child support funds. Indeed, his fears were contradicted by Sarah's income and expense declaration, which showed monthly, nonattorney expenses that exceeded the amount of child support, and reflected substantial, unpaid dependency counsel and expert fees. We cannot reverse the denial of an order to show cause when the basis for the order to show cause was mere speculation unsupported by evidence.

III. *The Trial Court Properly Denied Jon's Next Attempt at Modification*

At the "review" hearing in May 2010 the trial court found no changed circumstances that would warrant a modification to the prior child support order. This was a proper exercise of the court's discretion.

 A child support order may be modified when there has been a material change of circumstances. (*In re Marriage of Williams, supra*, 150 Cal.App.4th 1221, 1234.) The party seeking the modification bears the burden of showing that circumstances have changed such that modification is warranted. (*In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1304 [83 Cal.Rptr.3d 72].) "The ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court. [Citation.] The reviewing court will resolve any conflicts in the evidence in favor of the trial court's determination." (*In re Marriage of Leonard, supra*, 119 Cal.App.4th at p. 556.)

The trial court's denial of the requested modification was appropriate, since there had been no significant changes since the last modification in December 2009. The dependency action was still in the prejurisdictional and disposition phase. The trial court still did not know what important rulings would be made at the jurisdictional and disposition hearings, and there had been no other substantive change in circumstances.

With the benefit of hindsight, it is relatively easy for the appellant to criticize the trial court. It turns out that the dependency matter took an incredibly long time to progress, and the early stages of the dependency proceeding—which normally happen relatively quickly—lasted much longer than unusual. But the unusual slowness of the dependency matter could not have been predicted by the trial court. The trial court had ample basis for deciding that the visitation and custody situation were indeterminate at the initial modification request hearing, and this had not changed by the time of the review hearing. Since the original modification met the objective of protecting child's best interest and no material changed circumstances were present at the time of the review hearing, denial of further modification was proper.

## IV. *Attorney Fees*

Finally, Jon argues that the attorney fees and costs awarded to Sarah in connection with the December 2009, February 2010, and May 2010 hearings were either too high or should not have been awarded at all. An award of fees and costs in a dissolution or related family law proceeding is a matter left to the trial court's sound discretion, and absent "a clear showing of abuse, its determination will not be disturbed on appeal." (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768–769 [209 Cal.Rptr. 354, 691 P.2d 1020].) Jon has not clearly shown that the trial court abused its discretion.

The family court has considerable latitude to make a just and reasonable fee award. At the time the fee awards were made in this case, section 2030,

former subdivision (a)(2) provided that fee awards should be determined "based upon . . . (A) the respective incomes and needs of the parties, and (B) any factors affecting the parties' respective abilities to pay."[4] Section 2030, subdivision (c) provides: "The court shall augment or modify the original award for attorney's fees and costs as may be reasonably necessary for the prosecution or defense of the proceeding, or any proceeding related thereto, including after any appeal has been concluded." The family court is guided by section 2032, which provides that an award may be made when the award and amount are "just and reasonable under the relative circumstances of the respective parties. [¶] (b) In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320. . . . Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (§ 2032, subds. (a), (b).)

Jon argues that the trial court erred in awarding $20,000 at the first hearing because an attorney declaration in support of Sarah's written opposition, submitted prior to the hearing, showed less than $16,000 in fees and costs incurred. At the hearing, Sarah's counsel stated that she incurred an additional $9,000 in fees and costs since the opposition was filed, and the trial court awarded a total of $20,000. The court's consideration of the oral request for additional expenses and the partial award of that amount does not warrant reversal. (See *In re Marriage of McQuoid* (1991) 9 Cal.App.4th 1353, 1361 [12 Cal.Rptr.2d 737] ["Counsel's statements to the court were sufficient to establish the value of his services."].) In the declaration submitted by Sarah's attorney in the opposition papers, she stated that additional time would be spent reviewing the reply papers, preparing for court, and appearing at the hearing. The trial court had discretion to award fees and costs for further amounts that were reasonably incurred, and we find no abuse of discretion in its ruling.

 Next, Jon argues that the court improperly awarded fees and costs to Sarah in connection with his motion for reconsideration heard in February 2010. Jon claims that he was the prevailing party on the motion since the court made some relatively minor changes to the prior statement of decision.

---

[4] This language was replaced effective January 1, 2011, by the following: "When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs." (§ 2030, subd. (a)(2).)

This argument is pointless, since the issue of who "won" the motion is irrelevant. Although an order modifying a support order may include an award of attorney fees to the prevailing party (see § 3652), such an award is proper only if a section 2030 need-based award is not warranted. (*In re Marriage of Popenhager* (1979) 99 Cal.App.3d 514, 525 [160 Cal.Rptr. 379].) Because of the importance of ensuring that the parties both have the ability to present their cases effectively, attorney fees may be awarded against a prevailing party in family law proceedings. (*In re Marriage of Hublou* (1991) 231 Cal.App.3d 956, 966 [282 Cal.Rptr. 695].)

 Lastly, Jon contends that, in awarding $40,000 in fees and costs at the May 2010 hearing, the trial court improperly allowed Sarah to recover amounts that had previously been denied or were not sought in earlier hearings. This argument also fails. "No single fees and costs order is an 'all or nothing' proposition. Need-based awards may be *augmented* or *modified* as necessary during the entire pendency of the case, consistent with the parties' 'relative circumstances' [(§§ 2030, subd. (c), 2032, subd. (a))]." (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 14:7, p. 14-3 (rev. # 1, 2011); see also *In re Marriage of Hobdy* (2004) 123 Cal.App.4th 360, 367 [20 Cal.Rptr.3d 104]; *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1167–1168 [62 Cal.Rptr.2d 466].) The $40,000 fee award was considerably less than the $90,000 that Sarah was seeking based on evidence of fees and costs that she had incurred. It was also considerably less than the amounts charged by Jon's attorneys to litigate against her.

 In reviewing an attorney fee order, the record must reflect that the trial court considered the factors set forth in sections 2030 and 2032. (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 242 [91 Cal.Rptr.3d 241].) The purpose of section 2030 is to ensure parity. "The idea is that both sides should have the opportunity to retain counsel, not just (as is usually the case) only the party with greater financial strength." (172 Cal.App.4th at p. 251.) As for section 2032, it not only requires that the court consider the financial resources of each party, but also requires a broader analysis of the parties' relative circumstances. (172 Cal.App.4th at p. 254.) From our review of the record, we are satisfied that the trial court analyzed these issues thoroughly. As noted by the court, the incomes of the parties were highly disparate. The case had been litigated very heavily, and numerous orders to show cause and motions were filed in the relatively short time period since modification was first requested. Jon expended a great deal of money on attorney fees and costs. Without sizable fee awards, Jon likely would have litigated Sarah out of the case, a result contrary to the objectives of sections 2030 and 2032. Based on the circumstances, the fee awards ordered by the court were reasonable.

## DISPOSITION

The judgment is affirmed.

Doi Todd, J., and Chavez, J., concurred.