Filed 8/25/16  Marriage of Gensler CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of HOWARD and MARILYN GENSLER. | |
| HOWARD GENSLER, Appellant, v. MARILYN GENSLER, Respondent. | G052111 (Super. Ct. No. 11D010570) O P I N I O N |

Appeal from postjudgment orders of the Superior Court of Orange County, Claudia Silbar, Judge.  Appeal dismissed in part as moot; remaining order affirmed.

Howard Gensler, in pro. per., for Appellant.

Law Office of Desiree Causey and Desiree Causey for Respondent.

\*                    \*                    \*

Howard and Marilyn Gensler were divorced in February 2012.  The couple had four children, including Jennifer, the youngest, born in April, 1998.  The judgment, born of an agreement between the parties, provided for equal physical custody of the four

children between them, i.e., 50-50. On March 11, 2015, the trial court made an order which vested sole legal and physical custody of Jennifer in Marilyn, apparently because of a perceived breakdown in the relationship between Howard and his daughter. Howard has appealed from that order.[1]

We are forced to dismiss that part of Howard's appeal as regards the custody and visitation order as to Jennifer. Jennifer turned 18 in April, 2016, and with that, California courts lost all jurisdiction to force visitation between Jennifer and her father. We could not now give Howard the relief he seeks even if, for sake of argument, we were to find his position otherwise compelling. (See *In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 594 ["the court had no authority to issue a visitation order regarding Poomi after he reached the age of majority"]; *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 419 ["A question becomes moot when, pending an appeal from a judgment of a trial court, events transpire which prevent the appellate court from granting any effectual relief."].) This is one of the unfortunate cases where taking an appeal, given the usual time delays, does not afford an aggrieved litigant an "adequate remedy" at law. Howard's real remedy was to have immediately petitioned this court for writ relief. (See *Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1057 ["There is a particular need to accelerate the writ process in child custody disputes where children grow up quickly and have immediate needs."].)

We will, however, observe for Howard's benefit that visitation and custody orders arising out of divorce regularly have nothing to do with parental unfitness. The question of parental unfitness typically arises not in the divorce context, but in the juvenile dependency context, where the government may be stepping in to permanently

---

[1] The custody and visitation decision made March 11 was later embodied in a formal order filed April 30, 2015. Another decision, involving child support, was also later embodied in a formal order filed April 30, 2015. The notice of appeal, filed June 17, 2015, mentions only an order entered on April 30, 2015. Given the rule of liberal construction of notices of appeal (see Cal. Rules of Court, rule 8.100(a)(2)), we construe the notice of appeal to encompass both formal orders filed on April 30, 2015.

terminate a parent's rights. Howard's case arises out of the more typical divorce context.[2]

Howard has also appealed from a child support order made on March 19, 2015.[3] This order was the result of Marilyn's request for order filed September 10, 2014. Marilyn's request was predicated on the theory that all four children were already spending almost all their time with her anyway, and Howard should be ordered to pay "guideline" child support. This issue is not moot.

Howard's arguments on appeal are exclusively focused on the absence of a change of circumstances in *Marilyn's* financial situation. (If anything, says Howard, Marilyn is slightly better off financially than she was in 2012.) But the argument fails because, in point of fact, there *was* a material change of circumstances for the worse for Marilyn, namely her "time share" with Jennifer went from 50-50 under the 2012 judgment to 0-100 in March 2015. A change in time share will readily qualify as a change of circumstances required to modify a child support order. (E.g., *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039 (*Cryer*) [reduction in payee parent's time share was change of circumstances justifying reduction in payor parent's support level].[4]) Indeed, one of the most significant variables for the calculation is respective time shares. (See Fam. Code, § 4055, subd. (b)(1)(D) [defining "H%" as the "approximate percentage

---

[2] For example, *In re Julie M.* (1999) 69 Cal.App.4th 41, one of Howard's strongest cases for the proposition that a court cannot give a minor child veto power over visitation, is a *dependency* case, where the mother might readily be described as unfit. (See *id.* at p. 44 ["Lorraine has an ongoing history of drug abuse and assaultive behavior."].)

For an excellent review of the jurisprudence of parental unfitness and the actual *termination* of rights, which has been mostly developed in the context of state laws terminating the rights of unwed fathers, see *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 830-840. The law distinguishes between state action that in effect breaks up a natural family (for that unfitness *is* required) from traditional divorce custody and visitation law, where fitness *qua* fitness is usually assumed, and the operative question becomes what is in the best interest of the child. As this court said *In re Marriage of Dunn* (2002) 103 Cal.App.4th 345, 348: "Child custody and visitation orders may be modified based on the 'best interests of the child' and, as an adjunct to the best-interest test, in final judicial custody determinations where the moving party also has established a significant change in circumstances. [Citation.] The 'overarching concern' remains the best interests of the child. [Citation.]"

[3] Likewise embodied in a separate formal order filed April 30, 2015.

[4] Though one should note the trial court applied a special circumstances rule so the reduction was not as much as the payor parent said it should have been. (See *Cryer, supra*, 198 Cal.App.4th at p. 1049.)

of time that the high earner has or will have primary physical responsibility for the children compared to the other parent"].)

We note further that Howard points us to no place in the record where he argued to the trial court that special circumstances would have justified a lower-than-guideline support order, and on appeal he makes no argument that *not* deviating from the guideline formula was necessarily an abuse of discretion.  In fact, at the beginning of the March 19, 2015 hearing, there was an agreement by both parties as to the "child-support number," with the main dispute being over the date the order was to commence. (Howard makes no argument in regard to the commencement date in his opening brief.)

On the other hand, Marilyn's request for appellate sanctions, made casually in the course of her respondent's brief, must be denied.  Were this case not moot, Howard's argument that a child should not have a veto power over visitation – even if made in the context of a normal custody and visitation case – is certainly a serious one, and if raised when this court might have been able to afford relief might have been convincing.  It is certainly a close enough call that we cannot deem it frivolous.

Marilyn, as the prevailing party, will recover her costs on appeal.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

THOMPSON, J.

4