Filed 6/27/13  Marriage of Sabrdaran and Roshannai CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Marriage of SHARAREH SABRDARAN and MOHAMMAD ROSHANNAI. | |
| | G047182 (consol. with G046838) |
| SHARAREH SABRDARAN, | (Super. Ct. No. 01D002924) |
| Respondent, | O P I N I O N |
| v. | |
| MOHAMMAD ROSHANNAI, | |
| Appellant. | |

Appeal from an order of the Superior Court of Orange County, Daniel J. Didier, Judge.  Affirmed.

Law Offices of Christopher K. Jafari and Christopher K. Jafari for Appellant.

Hughes and Hughes and Lisa Hughes for Respondent.

\*          \*          \*

Mohammad Roshannai appeals from the trial court's postdissolution order modifying child support, determining child support arrears, and ordering that he pay $50,000 towards the attorney fees of his former wife, Sharareh Sabrdaran. He argues the trial court erred by failing to offset his child support arrears by unspecified expenses he incurred in providing a home for his family when he and Sabrdaran reconciled and had another child. He complains the trial record does not include his most recent income declaration, and concludes the trial court therefore based its child support calculation on outdated data. He also contends the trial court erroneously failed to prospectively reduce his support obligation because his disability income supplement would terminate within the year. He challenges the attorney fee order on numerous grounds and, finally, he argues the evaluator the trial court appointed to assess his flight risk was biased against Persian men, although he does not challenge the trial court's order requiring monitored visitation to mitigate concerns Roshannai would abscond with the children to Iran. As we explain, the challenges Roshannai asserts are without merit, and we therefore affirm the trial court's ruling.

I

FACTUAL AND PROCEDURAL BACKGROUND

The parties married in March 1999, Sabrdaran filed for divorce in 2001, the year their son was born, and in March 2003 the trial court entered the couple's marital settlement agreement as a court judgment. The judgment reserved jurisdiction on some issues, including marital status, but resolved child custody and visitation, child and spousal support, and property division according to the terms of the parties' agreement. The judgment omitted spousal support based on Sabrdaran's voluntary waiver, set Roshannai's child support obligation at $1,050 a month, and recognized that while "the

2

parties may attempt a reconciliation in the future," successful reunification would "not in any manner cancel, terminate or modify this agreement unless the parties agree in writing to the contrary."

The parties designated a sparse record on appeal and provide few details or record citations in their briefing, but it appears they reconciled within a few months of the 2003 judgment. They purchased a home in Newport Coast in 2005, where they apparently resided together, and they celebrated the birth of their daughter in 2006. But the marriage continued to unravel, they returned to court, and the trial court entered a divorce judgment in June 2010.

Because the appellate record does not include the moving papers, the chronology and other details are uncertain, but Sabrdaran eventually sought child support for the couple's daughter, who was born after the 2003 support order based on the couple's marital settlement agreement. Sabrdaran also sought child support arrears for the couple's firstborn child.

Sabrdaran became concerned Roshannai, a dual citizen, would flee to Iran with the children. She obtained an order in March 2011 requiring the parties to submit their passports to the court and preventing either parent from traveling outside Orange County with the children. The trial court ordered an evaluation under Evidence Code section 730 (§ 730 evaluation) to assess Roshannai's flight risk. The court specified it entered its interim "No Travel With Children" order "w/o [without] prejudice based on [the] evidence so far and to preserve [the] status quo pending [the] § 730 evaluation."

The court's interim order required Roshannai to post a $25,000 bond as a flight deterrent "prior to exercise of [his] timeshare" with the children, but he had difficulty obtaining a bond for this purpose. According to Sabrdaran, she nevertheless

"continued to provide regular and continuing supervised visitation [for Roshannai] even though this was no[t] required." According to Sabrdaran, Roshannai "insisted on having the children at his house without supervision," even "offer[ing] to pay me $100,000 to have [unsupervised] visitation," but she refused on grounds "that no amount of money would convince me to put the kids [at] risk of being abducted to Iran."

The § 730 evaluator, a clinical psychologist who conducted extensive interviews with the parties and the children, concluded Roshannai posed a high flight risk. Indeed, the psychologist stated in his August 2011 written report, "I would label Mr. Roshannai as the highest flight risk I have ever evaluated. He is a manipulative, calculating, and highly skilled adult with a masters degree who has thought out his plan and has obviously taken some steps towards it." (Underlining omitted.) Roshannai did not disclose to the evaluator that he had been diagnosed with prostate cancer more than a year earlier. This omission troubled Sabrdaran because Roshannai informed her of his plans to seek in Iran medical treatment not available in the United States, and she feared he would take the children with him.

At a hearing in mid-January 2012, the trial court found Sabrdaran and the § 730 evaluator presented "very compelling evidence" that Roshannai posed a flight risk, which Roshannai does not challenge on appeal. Nor does he challenge the court's remedy, which dispensed with any need "for a bail bond," and instead required monitored visitation to mitigate the flight risk.

After further proceedings including the parties' sworn testimony, admission of financial exhibits, and argument of counsel, the trial court increased Roshannai's child support obligation from $1050 monthly for his son to $2,186 total for both of his children, based on his earnings and earning capacity. Specifically, the trial court found

4

his monthly income included $2,250 in Social Security, $1,367 in disability payments, "recurring and regular monetary gifts from his parents/relatives of at least $1,500 per month for the last two years," and investment income from nearly a half million dollars in retirement and liquid assets. Roshannai, a longtime software engineer with an MBA from Chapman University, had founded several successful companies in the computing industry, sold one in 2007 or 2008 for $1.4 million, and continued working in the field. Noting Roshannai received unreported commission income in 2010 and 2011 of $3,500 per month," the trial court imputed self-employed income to Roshannai "*conservatively at $3,500 per month.*" (Original italics.) The court acknowledged Roshannai "reportedly has terminal stage IV prostate cancer," but observed "he currently appears relatively fit, is seeking employment, and is able to travel out-of-state." The court recognized Roshannai's medical condition required "continuing" supervision.

In subsequent hearings, the trial court determined Roshannai's child support arrearages stood at $158,659.30, and the court also ordered him to pay half of $100,000 in attorney fees Sabrdaran requested. He now appeals.

II

DISCUSSION

A.    *Cohabitation Offset*

Roshannai contends the trial court erroneously failed to adjudicate whether he was entitled to an offset against child support arrearages based on the children living with him when he and Sabrdaran reconciled. He argues "this matter must be remanded for reconsideration due to the trial court's express failure to exercise its discretion regarding the child support credits/offsets." The record does not support his contention.

5

Roshannai relies on the equitable rule recognized in *Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 367-368 (*Jackson*), that a parent's outstanding support obligation may be reduced proportionally for time the child lived with the obligor, based on the parent paying housing and other expenses. As we have observed, "the trial court may determine a parent has satisfied his or her support obligation in a manner other than direct financial payments, as where the parent assumes increased physical custody of the child. [Citations.] And where a parent has made payments beyond those ordered, the court may credit the surplus to arrears." (*In re Marriage of Tavares* (2007) 151 Cal.App.4th 620, 626.) "This does not effect an improper 'retroactive modification'" of the order requiring child support "because the arrearages are *deemed satisfied* by the obligor's direct provision for the child's needs" while residing in the obligor's home. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2012) ¶ 17:81.1, p. 17-32.3, original italics.)

These principles do not apply here, however, because Roshannai did not ask the trial court to adjudicate whether he was entitled to *Jackson* offsets. Instead, the record shows he simply asserted the matter *already* had been determined by a previous bench officer, Judge Linda Miller, in February 2011, and therefore was governed by principles of res judicata or collateral estoppel. But as the trial court observed in the ruling now on appeal, "Unfortunately, . . . there is no corresponding finding or order [on a *Jackson* offset] made in the minutes or notice of ruling for the 2/7/2011 hearing, much less a judgment on the issue." As Sabrdaran explains, Judge Miller acknowledged at the earlier hearing she was aware of how *Jackson* offsets function, but made no ruling, expressly stating, "I would need you to brief it" because "I'm not going to make a finding at this point on arrears."

Roshannai concedes on appeal that his "previous counsel had erroneously raised an argument of res judicata." But Roshannai insists counsel "nonetheless concurrently raised the issue of *Jackson* offsets." (Italics added.) He argues the trial court should have ignored his prior adjudication rationale, and instead should have decided "the issue of *Jackson* offsets . . . both in the context of his oral request [RT 200, line 21 through RT 200 line 1 [*sic*]] and in his written brief [CT 261, lines 21-28]." (Italics added; original record citations.)

Sabrdaran responds that Roshannai failed "to provide the trial court with *any* evidence as to the expenses actually paid by [Roshannai]" while the children lived with him, precluding offset. (Original italics.) To bolster his offset claim on appeal, Roshannai relies on a portion of the § 730 evaluator's report as evidence that he furnished a home for the children at a cost far exceeding his child support obligation. He provides no evidence of his aggregate or monthly homeowner expenses, nor any mathematical calculation offsetting those expenses against his child support obligation. Instead, he relies on a brief notation in the historical section at the outset of the § 730 evaluator's report: "In 2005, they purchased their $1.75 million house in Newport Coast." Sabrdaran does not dispute the purchase occurred during the period during which she and Roshannai reconciled.

The words "they purchased," however, do not support the conclusion *Roshannai* provided the home. He relies on the § 730 evaluator's subsequent notation that, "[a]lthough [Sabrdaran] had been working prior to 2005 as a real estate agent, she was not that successful, so she decided to stay home with the children full time." Roshannai asserts the only reasonable inference from this language is that an unsuccessful agent could not have had other assets to contribute to the purchase, and

therefore the trial court was required to infer Roshannai paid for the home, either outright or by monthly payments in an unspecified amount. Based on this chain of reasoning and lone citation to the purchase of the home as a potential expense offsetting his support obligation,[1] Roshannai argues the trial court erred by denying his offset request.

We need not consider the merits of Roshannai's argument. The problem remains that he only asked the trial court for *Jackson* offsets based on the court's supposed prior adjudication of the issue. His own record citations to his "oral request" and his "written brief" on *Jackson* reveal the fictitious prior adjudication was the sole basis for his offset demand. Specifically, his oral request consisted of asking for "the opportunity to brief" why he was entitled to a *Jackson* offset, and his written brief erroneously asserted he was entitled to the offset — and $225,000 in sanctions — because Sabrdaran "has failed to disclose to this Court the previous ruling by Judge Miller on the identical child support arrears issue."

The court had not ruled as Roshannai claimed it did. Nor did Roshannai produce, mention, or cite anywhere in his oral request or written brief in the trial court any evidence to support his offset request. He did not request that the trial court adjudicate whether he was entitled to *Jackson* offsets on any basis other than res judicata or collateral estoppel. The trial court could not adjudicate or grant him *Jackson* offsets on a basis he did not request. We may not reverse a lower court ruling absent prejudicial error (Cal. Const., art. VI, § 13), and the trial court does not err "in failing to conduct an analysis it was not asked to conduct." (*People v. Partida* (2005) 37 Cal.4th 428, 435.) In

---

[1] Roshannai's attorney suggested at a hearing below that Roshannai "was making all of the household bills paid" (*sic*) during the period the couple reconciled, but he provided no evidentiary support for this claim, and the arguments of counsel are not evidence.

sum, Roshannai provided no viable legal argument or supporting evidentiary basis to be credited with an offset, and therefore his appellate challenge fails.

B.      *Outdated Income Declaration and Mistake Concerning Future Disability Income*

Roshannai asserts the trial court relied on faulty premises to calculate his child support obligation.  First, he observes that "nowhere on the [trial c]ourt's [d]ocket is there any indication that [his January 2012] Income and Expense Declaration was filed and received in order for the [c]ourt to consider it when it took the matter under submission."  Roshannai contends he provided the declaration to the court at the January 27, 2012 hearing and notes the court confirmed, "I have it right here."  He argues "the matter must be remanded with instructions for the [c]ourt to reconsider its child support order based on the current Income and Expense Declaration, rather than the outdated February 7, 2011 Income and Expense Declaration."

Roshannai fails to establish he is entitled to remand.  He assumes the trial court overlooked the January 2012 declaration because it is now absent from the trial record, but the court's statement, "I have it right here," suggests the court received the document.  The standard of review requires that we make every presumption in favor of the ruling below, and we therefore must presume the trial court reviewed the document (Evid. Code, § 664) and that it supported the trial court's ruling.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Roshannai insists it is "substantially evident that the [c]ourt relied on an old Income and Expense declaration dated February 7, 2011," but he provides no support for the assertion, thereby forfeiting it.  (Cal. Rules of Court, rule 8.204 [appellate points must be supported by reasoned argument, with citation to record and authority]; accord, *People v. Stanley* (1995) 10 Cal.4th 764, 793 [appellant must "specify how the evidence fails to

9

support" the judgment].) Moreover, he provides no explanation why he could not immediately complete or correct the trial record below, and seek reconsideration under Code of Civil Procedure section 1008 or through a new trial motion or similar means if the trial court indeed overlooked the January declaration. It is the challenger's duty to settle the trial record, and his or her failure to diligently do so forfeits the issue on appeal. (*Leeper v. Ginsberg* (1943) 58 Cal.App.2d 591, 593.) Consequently, Roshannai's demand for a remand "do-over" is without merit.

Second, Roshannai claims the trial court mistakenly based its child support calculation on the faulty assumption a $1,367 monthly disability payment supplementing his income would continue. Roshannai implies the trial court assumed the payment would continue perpetually. The record does not support Roshannai's claim.

Roshannai testified he began receiving disability income in August 2011. He provided no documentation concerning the terms of the payment or its duration, but when the trial court asked whether he believed it "would last for one year," Roshannai responded affirmatively. The trial court entered its child support order on March 2, 2012 when, according to Roshannai's testimony, his disability payments were slightly more than half complete since August 2011, and therefore would continue at least another five months. Roshannai cites no authority for the proposition that the trial court was required to enter in March 2012 an order prospectively reducing his support obligation in August 2012. To the contrary, a trial court sets the support amount based on current circumstances (Family Code, § 2106; all further undesignated statutory references are to this code), and if those circumstances change, the obligor may obtain a corresponding modification. (See § 3680 [providing for a "simple method available to parents to

10

quickly modify their support orders when circumstances warrant a change in the amount of support"]).  Roshannai's premature challenge to the support order therefore fails.

C.      *Attorney Fee Order*

Roshannai contends the trial court abused its discretion by ordering him to pay $50,000 of Sabrdaran's attorney fees.  The trial court may order a party in a divorce proceeding to pay some or all of the spouse's attorney fees.  (§§ 2030, 2032, 4320.)  Fee-shifting is not based on prevailing party considerations; rather, the statutory purpose "is to ensure a party has sufficient resources to adequately and properly litigate the controversy and to implement public policy favoring 'a parity between spouses in their ability to obtain legal representation' (equalizing litigating strengths)."  (Hogoboom & King, *supra*, ¶ 14:155, p. 14-49 ["The aim is *not* to 'reward' the winner or 'punish' the loser"].)  In particular, section 2032 requires consideration of the parties' relative circumstances; accordingly, "[t]he other party's *superior ability* to pay may itself make a fees and costs award 'just and reasonable.'"  (Hogoboom & King, *supra*, ¶ 14:156, p. 14-50.)  We review the trial court's fee award for abuse of discretion, "and absent 'a clear showing of abuse, its determination will not be disturbed on appeal.'"  (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1054 (*Cryer*).)

Roshannai argues the $50,000 fee award was improper because Sabrdaran only documented $35,624 by attorney invoices.  He insists, "The record will reflect that Sabrdaran has made no further showing, whether by [d]eclaration of her counsel or by producing copies of its billings, that she is entitled to attorneys fees and costs at an amount greater than $35,624.00."  Roshannai misapprehends the record and the law.

The record shows Sabrdaran's counsel updated her December 2011 invoices that totaled more than $35,000 with a supplemental fee declaration and trial brief

11

in January 2012 requesting a $79,161 fee award, which counsel updated again with a posttrial brief requesting $100,000 in fees based on further court preparation and appearances. Roshannai assumes no fee award may issue without billing invoices, but counsel's fee declaration and oral request were sufficient. (*Cryer*, *supra*, 198 Cal.App.4th at p. 1055; see *In re Marriage of McQuoid* (1991) 9 Cal.App.4th 1353, 1361 ["Counsel's statements to the court were sufficient to establish the value of his services"].)

Indeed, "[t]hough clearly the better practice, declarations, testimony or other direct evidence of the *reasonable value of counsel's services* is not essential to support an attorney fee award 'because such evidence is necessarily before the trial court which hears the case.'" (Hogoboom & King, *supra*, ¶ 14:210, p. 14-72, original italics.) This is especially true when, as here, the appellant fails to request a statement of decision, which forestalls any claim for a precise computation of fees. (*Id.* at ¶ 14:209, p. 14-71.) In any event, counsel's invoices, declaration, and request amply supported the amount of the trial court's order.

Roshannai asserts the trial court erred in calculating the parties' relative needs and ability to pay attorney fees, specifically by failing to consider Sabrdaran's income and assets, by imputing $3,500 monthly to Roshannai in self-employed income, and by ignoring Roshannai's prostate cancer. None of these contentions demonstrate the trial court abused its discretion.

First, Roshannai infers from Sabrdaran listing $10,870 in estimated monthly *expenses* on her income and expense declaration that she must have had the ability to pay that amount. The inference does not follow logically, and Roshannai cites no evidence to support the conclusion she managed to pay this sum. In fact, Sabrdaran

12

stated on her declaration she had no income, and the trial court found her credible, which we may not second-guess. Roshannai suggests Sabrdaran *could* use her real estate license to sell "'approximately two homes a year up to the present date,'" as the § 730 evaluator noted she had done in the past, but Roshannai ignores the very next statement in the evaluator's report noting that lack of real estate success led to the decision she would stay home with the children in the couple's Newport Coast home. Noting her work ethic over their years together as an X-ray technician who started her own medical billing company and that she later earned her real estate license, Roshannai argues Sabrdaran "has a substantial earning capacity and potential" that the trial court ignored. But Roshannai made no attempt to impute income to her below, and his appellate challenge therefore fails.

Second, Roshannai disputes the trial court's "conservative[]" estimate of his ability to earn $3,500 in self-employed income in addition to his Social Security, disability, and other recurring income. Sabrdaran successfully moved the court to impute income to Roshannai, and the trial court may rely on imputed income in adjudicating an attorney fee request. (Hogoboom & King, *supra*, ¶ 14:173, p. 14:58; see, e.g., *In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1085.)

Roshannai acknowledges he "was *previously* making $3,500 per month through a temporary seven-month job that lasted from July 2010 to February 2011," but he argues that by the time of the court's order in March 2012, "he had '**no other jobs.**'" (Original boldface; italics added.) Roshannai's expertise in the software industry, including selling his software company for $1.4 million dollars, and his recent ability to command the $3,500 monthly consulting fee supports the trial court's reliance on that amount. As the sole judge of witness credibility, the court reasonably could find

Roshannai provided no adequate explanation for failing to earn income for more than a year despite his skill set.

Roshannai now argues the trial court erred by ignoring his prostate cancer. He does not specify how the diagnosis is relevant to the parties' relative circumstances for apportioning attorney fees at the time. In any event, the court acknowledged Roshannai recently disclosed the diagnosis, but observed, "[H]e currently appears relatively fit, is seeking employment, and is able to travel out-of-state."

On appeal, Roshannai complains, "Not only is it unconscionable for the [c]ourt to even consider [him] 'relatively fit,' but to say that Roshannai is 'seeking employment' during his final moments of his life is not only completely false, as the record makes no indication otherwise, but degrading to a father who is about to pass away and leave his two children behind." Roshannai's appellate umbrage is misplaced. His own testimony established he missed a trial day *not* because he was undergoing chemotherapy as he claimed, and for which the trial court excused his presence, but because "I was [at] a consumer electronics show" in Las Vegas "in an interview for a job." Given Roshannai himself did not view his cancer diagnosis as an impediment to employment, the trial court was not required to either.

Of course, if circumstances change and Roshannai's condition deteriorates, that will affect the calculus for any future court orders for support (§ 3680) or attorney fees, but nothing makes "*future* circumstances dispositive" for a fee order. (Hogoboom & King, *supra*, ¶ 14:161, p. 14-54, original italics.) Instead, existing circumstances control (*In re Marriage of Wolfe* (1985) 173 Cal.App.3d 889, 893), and Roshannai presented no evidence that his cancer diagnosis prevented the trial court from including imputed income as a basis for its attorney fee order. (See Hogoboom & King, *supra*,

14

¶ 14:161, p. 14-54 ["The matter is to be decided solely on the basis of *current* 'relative circumstances' (relative need and ability to pay)," original italics].)  There was no error.

D.    *Biased Section 730 Evaluator*

Roshannai contends reversal is required because the § 730 report revealed the evaluator "has a personal grudge against any male immigrant from Iran by making generalizations about Iranian men while making no connection to Roshannai whatsoever."  The report, however, has little to do with the child support, arrearages, and attorney fee calculations at issue on appeal.  The trial court ordered the evaluation to assist it on other issues:  whether Sabrdaran or Roshannai alienated the children from each other, Roshannai's flight risk, and assessing "the health, safety, welfare and the best interests of the minor child *with regard to disputed custody and visitation issues*." (Italics added.)  Roshannai argues the trial court abused its discretion by denying his request for a continuance for a potential rebuttal expert witness to review the report and interview Roshannai.  (*In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116, 1130-1131.)  But because Roshannai does not challenge the trial court's rulings on any of the issues at stake in the report, requiring a continuance on remand would be an idle gesture and a moot point.

Roshannai insists the report is relevant on appeal because Sabrdaran invoked it generally at trial to undermine his credibility.  But the trial court heard Roshannai testify and could judge for itself his credibility, including his false explanation his attorney appeared at trial without him because he was undergoing chemotherapy, when he was actually in Las Vegas at a technology convention.

Notably, the § 730 report had no conceivable bearing on Roshannai's erroneous res judicata offset challenge, nor anything to do with his appellate challenge to

the amount of monthly child support based on the absence of his income declaration from the record and the temporary nature of his disability income. Roshannai's credibility arguably bears on his attorney fees challenge because his imputed income factored into the award, based on the parties' relative need and ability to pay litigation costs. But the trial court based its $3,500 imputed income figure on Roshannai's recent employment at exactly that amount. The § 730 report had nothing to do with this conclusion. Consequently, there is no basis for reversal to strike the report or hear a rebuttal report on the issues presented on appeal.

III

DISPOSITION

The trial court's order is affirmed. Respondent is entitled to her costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.

16